**Louis BLACK, Martin Goodson, and Pearl Tubbs, etc., Plaintiffs,**

v.

**Mrs. Hilliard B. BONDS, d/b/a Ritz Cafe, Defendants.**

**Civ. A. No. 5399–69.**

United States District Court
S. D. Alabama, N. D.

Dec. 23, 1969.

Oscar W. Adams, Jr., U. W. Clemon, Birmingham, Ala., for plaintiffs.

Perry Hubbard, Tuscaloosa, Ala., O. S. Burke, Greensboro, Ala., for defendants.

## OPINION

PITTMAN, District Judge.

This is a class action seeking injunctive relief against discrimination in a place of public accommodation pursuant to Title 42 U.S.C. Section 1981 and Title 42 U.S.C. Section 2000a et al. (Civil Rights Act of 1964).

Jurisdiction of this court is invoked under 28 U.S.C. § 1343(3) and (4).

The plaintiffs in this case are Negro residents of Greensboro, Hale County, Alabama. The defendant is owner and operator of the Ritz Cafe, located in the downtown area of Greensboro, a town of approximately 3,100 persons, with a large percentage of Negro residents.

The Ritz Cafe is a small cafe, containing three tables, five booths, and eight to ten counter stools. There are two waitresses and four other employees (cook, dishwasher, etc.)

Plaintiff Louis Black testified that on March 4, 1969, he, along with three other Negro persons, entered the Ritz Cafe at approximately 11:15 a. m. They sat on the counter stools. After being seated approximately five minutes they requested service of a waitress and received no reply nor service.

He further stated that after the plaintiffs had entered the cafe, as many as twelve white people came in and were served.

Plaintiff Black then left the cafe (the other three remained), "To go see the Mayor". He returned to the Ritz at about 11:35 a. m., and remained until approximately 12:00, awaiting service. No service was given and all four left. The day before he had called the cafe by telephone two times and made inquiry about the cafe's alleged refusal to serve a Negro lady and was told by the lady who answered that she did not own the business and did not care to talk about it.

Plaintiff Pearl Tubbs, one of the four who went to the Ritz Cafe on March 4, 1969, testified substantially the same as Black.

Mr. Billy Bonds, husband of the defendant, testified for the defendant.

He testified that although he is employed at another job, he opens the cafe at 5:00 a. m. each morning and remains for an hour before going to his place of employment. He returns to the cafe at approximately 6:00 p. m. and works there until it closes at 8:00 p. m.

Mr. Bonds further testified that following the passage of the Civil Rights Act of 1964, he attended a meeting of the white restaurant owners and the mayor of Greensboro, and that they all agreed to abide by the law.

He stated that he had personally instructed the employees of the Ritz to serve all customers, regardless of race. He has personally served Negroes before and after the incident of March 4, 1969, and has never known a Negro to be refused service in the Ritz Cafe (at least, not since the passage of the 1964 Act).

A white lady customer of the cafe gave a different version of what happened on March 4, 1969. She works for a company which does business with the defendant and the defendant's husband.

She eats lunch at the Ritz Cafe almost every day. On the day in question, she came into the Ritz with her daughter and sat in one of the back booths. She saw the plaintiffs come in and sit at the counter. She stated the cafe was very busy with most of the booths and tables being occupied. Her order was taken prior to the plaintiffs entering the cafe, but she was not served until after the plaintiffs left. The plaintiffs remained in the cafe only a few minutes before leaving. The counter waitress was on the telephone for all or most of the time the plaintiffs were seated at the counter. The other waitress, afflicted with arthritis, (a fact evident to the court by observing her come into and go out of the courtroom), was, according to this witness, serving the remaining areas of the

cafe. Mrs. Morrison further testified she had seen Negroes served in the Ritz Cafe prior and subsequent to the incident in question.

The other witnesses for the defendant testified substantially the same. The crippled waitress, a sister of the defendant, testified two Negro ladies had come in the cafe before the plaintiffs' group. She had a limited conversation with them. She said she did not understand what they wanted. They were not served.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Factually, what the court is faced with is a plaintiff who says the defendant did something, offering testimony to support the contention, and a defendant who says she is not guilty of doing what the plaintiff contends, again, offering proof to support her side of the story.

This court cannot ignore the history of discrimination in places of "public accommodation" which gave rise to the passage of the Civil Rights Act of 1964. It is an historical fact that over the years Negroes have traditionally been refused service in white-owned restaurants, and generally the smaller the community and the greater the percentage of Negroes to whites, the deeper the emotion and reluctance to give way to new ways.

Whether this discrimination is embodied in an absolute denial of service, or a practice of "delayed service", is of little import, for both are equally condemned by the Civil Rights Act of 1964 (42 U.S.C. § 2000a), to wit:

"(a)    All persons shall be entitled to the *full* and *equal* enjoyment of the *goods, services,* * * * of any place of public accommo-

dation    *    *    *." (Emphasis added.)

■■    This court concludes and finds in fact the actions of defendant's waitresses constituted discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a and it is therefore ordered, adjudged and decreed that the defendant, her agents, successors, employees, and those acting in concert with her, and at her direction, are enjoined from denying, withholding, conditioning, limiting, or otherwise interfering with plaintiffs and others similarly situated in admission to and use and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Ritz Cafe.

The plaintiff seeks recovery of attorney's fee in the amount of $1,000.00.

■■    In light of the small size and probable income of the cafe in this small town, it is the court's judgment that a fee in this amount, together with court costs, would be an unwarranted burden and unjust. The purpose of the law is to accomplish "Equal Rights under the Law" to "all persons". It is not to put any one out of business.

Title 42 U.S.C. § 2000a-3 provides:

"The court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee,    *    *    *."

It has been held the District Court should consider allowance of counsel fees, "unless special circumstances would render such an award unjust." Newman v. Piggie Park Enterprises, Inc., C.A.S.C.1967, 377 F.2d 433, affirmed, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263.

It is therefore ordered, adjudged and decreed that the plaintiffs may have and recover of the defendant an attorney's fee of $500.00 together with other costs.