**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JESSE J. WILLIAMS,

             *Plaintiff-Appellant,*

v.

STAPLES, INCORPORATED, d/b/a The Office Superstore Staples, Incorporated,

             *Defendant-Appellee.*

No. 03-1550

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Samuel G. Wilson, Chief District Judge.
(CA-02-54-5)

Argued: December 5, 2003

Decided: June 23, 2004

Before WIDENER, MICHAEL, and SHEDD, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Shedd wrote the majority opinion, in which Judge Michael joined. Judge Widener wrote a concurring opinion.

---

## COUNSEL

**ARGUED:** Reed Neill Colfax, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS, Washington, D.C., for Appellant. Jessica Regan Hughes, SEYFARTH SHAW, Washington, D.C., for Appellee. **ON BRIEF:** Eliza T. Platts-Mills,

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS, Washington, D.C.; Stephen F. Hanlon, Jennifer M. Mason, HOLLAND & KNIGHT, L.L.P., Washington, D.C., for Appellant. Abbey G. Hairston, SEYFARTH SHAW, Washington, D.C., for Appellee.

---

## OPINION

SHEDD, Circuit Judge:

In his civil rights complaint, Jesse Williams, an African- American, claims that Staples, Inc. discriminated against him on account of his race when it refused to accept his personal check to make a purchase. The district court granted summary judgment in favor of Staples. Williams appeals. We reverse the judgment of the district court and remand.

### I.

On the afternoon of June 26, 2001, Williams attempted to purchase a printer cartridge at the Staples office supply and photocopying store in Winchester, Virginia.[1] After finding the cartridge, Williams presented his personal check, which included his pre-printed Maryland address, to a female sales clerk. At the time, Staples had a nationwide policy of accepting all checks (as long as they met certain criteria not material to this case). Clerks were supposed to insert all checks into a device on the cash register, which would electronically verify the checks through a neutral, third-party check guarantee system. Contrary to Staples' policy, the clerk informed Williams that Staples "did not accept out-of-state checks." J.A. 141. Williams offered to show the clerk his Maryland drivers license and his identification card from the nearby university he was attending, but the clerk repeated that Staples could not accept out-of-state checks. Williams left the store without making the purchase.

---

[1]Because we are reviewing the grant of summary judgment in favor of Staples, we view all the evidence, and the reasonable inferences drawn therefrom, in the light most favorable to Williams. *See Altizer v. Deeds*, 191 F.3d 540, 547 (4th Cir. 1999).

About three weeks after this incident, Williams had breakfast with several of his university classmates. One of the classmates complained that the Winchester Staples had mishandled his photocopying order. Williams added that he also was dissatisfied with Staples because it refused his out-of-state check. Another classmate, Heather Hutchinson, who is white, replied that she had recently used her out-of-state check — also from Maryland — at Staples. She later showed Williams the receipt from her transaction. It was dated June 26, 2001, the same day Staples refused to take Williams's out-of-state check.

Williams promptly telephoned Staples and spoke with a manager. Williams explained how he was treated differently than Hutchinson. The manager informed Williams that the decision to accept a particular check is a "judgment call" decided on a "case-by-case basis." J.A. 155.

Believing that he had been discriminated against because of his race, Williams reported the incident to a civil rights advocacy agency. This agency sent two male "testers," one African-American and the other white, to the Winchester Staples to make purchases to see how they would be treated.

The first tester, Herman Hill, is African-American. He presented his personal out-of-state check — also from Maryland —to Mary Cook, an African-American sales clerk.[2] She looked at the check and said that Staples could not accept an out-of-state check. Hill asked if she was certain about the policy. Cook insisted that Staples did not accept out-of-state checks. Hill then offered to pay with his Visa debit card, which Cook accepted, and the transaction was completed.

The second tester, Daniel Sullivan, is white. He entered the store shortly after Hill finished his transaction. He presented his personal

---

[2]Staples contends the fact that Cook is an African-American negates any inference that she would discriminate against Hill. We disagree. An African-American person can discriminate against another African-American person based on race just as a white person can discriminate against another white person based on race. Whether Cook's race affected how she treated the African-American tester is a matter for the finder of fact to decide.

out-of-state check — also from Maryland — to Cook, the same clerk who handled Hill's transaction. Cook told Sullivan that Staples did not "usually" accept out-of-state checks. J.A. 120. Cook asked Sullivan if he had a credit card, and Cook replied that he did not. Cook then called the manager, who examined the check and told Cook to accept Sullivan's check for processing. The clerk processed the check through the cash register, but it was declined by the automated check verifying system. Sullivan paid for his purchase with cash.

Williams deposed several of the female employees who worked the day of his alleged attempted transaction.[3] Williams has not been able to identify the female clerk who refused his check. None of the employees who were deposed remembers waiting on Williams. All of these employees except one testified that Staples' policy required them to accept all checks — including out-of-state checks — for processing through the check verifying system. The sole exception was Debbie Johnson, who testified she was told in training that Staples did not accept out-of-state checks and that sales clerks were required to summon a store manager whenever an out-of-state check was presented. As for Cook, the clerk who waited on the two testers, she testified that she knew that Staples' policy was to accept all checks for processing. Although she did not remember waiting on the two testers, she denied she would have told any customer that Staples could not accept an out-of-state check.

## II.

Williams filed this 42 U.S.C. § 1981 action, alleging that Staples deprived him of his right to make and enforce contracts based on his race. Staples moved for summary judgment, and the district court granted the motion. The court ruled that Williams failed to establish a prima facie case because he had not offered evidence that Staples applied a different check-cashing policy to African-American customers than it applied to white customers. The district court decided that the evidence showed, at best, that the employees of Staples refused to accept the checks of Williams and the testers because the employees "did not have a clear understanding of Staples' check cashing pol-

---

[3]It appears that two female clerks, Carol Stidman and Corby Morrison, were not deposed.

icy." J.A. 191.[4] The court also concluded that Williams's allegation that Staples refused his check because of his race was simply speculative.

## III.

We review the grant of summary judgment de novo. *JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Summary judgment is appropriate when the admissible evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002).

## IV.

Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (a). Because Williams has not presented any direct evidence of intentional discrimination by Staples, he must proffer sufficient circumstantial evidence to satisfy the familiar *McDonnell Douglas* analytical framework. *See Murrell v. The Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). Under this framework, the plaintiff must first establish a prima facie case of discrimination, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). Although the

---

[4]This finding by the court is clearly wrong as it relates to Cook's treatment of Hill, the African-American tester. Cook testified that she understood the policy and knew that she was supposed to accept all checks for processing. Nevertheless, according to the evidence adduced by Williams — which must be accepted as true for purposes of summary judgment — Cook refused to accept Hill's check. Thus, if Cook refused to accept Hill's check, it was not because she misunderstood Staples' policy.

respective evidentiary burdens shift back and forth under the frame-work, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case of discrimination in a § 1981 cause of action relating to the purchase of goods or services, Williams must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly sit-uated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers. *See Murrell*, 262 F.3d at 257 (establishing elements of a § 1981 cause of action in a hotel accommodations case).[5]

We conclude that Williams has adduced sufficient evidence to establish a prima facie case. First, Williams, as an African-American, is a member of a protected class. Second, Williams sought to enter into a contractual relationship with Staples when he attempted to pur-chase the printer cartridge. Third, Williams met the ordinary require-ments to pay for and receive the printer cartridge by offering payment by out-of-state check because, at the time of the attempted transac-tion, Staples alleges that it maintained a policy of accepting all checks from all customers for processing through its neutral check verifica-tion system. Fourth, Williams was denied the opportunity to enter into a contract with Staples even though Staples afforded such an opportu-nity to a white customer. It is undisputed for purposes of this motion

---

[5]The district court used the prima facie case elements established in *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707 (D. Md. 2000). We decline to adopt the *Callwood* elements in this case. *Callwood* purports to provide an alternative analytical approach in public accom-modation discrimination cases in which there is scant evidence as to how members of the protected class are treated differently from members out-side the class. *Callwood* is not applicable to this case, because there is adequate comparative evidence showing how Williams was treated dif-ferently than his white classmate and the white tester and how the African-American tester was treated differently than the white tester.

that Staples accepted the out-of-state check of Williams's white class-mate on the same day that Staples rejected Williams's out-of-state check.[6]

Because Williams has established his prima facie case, he has created a rebuttable presumption that Staples unlawfully discriminated against him. *See United States Postal Serv. v. Aikens*, 460 U.S. 711, 714 (1983) (Title VII context). To rebut this presumption, Staples must clearly set forth, through the introduction of admissible evidence, a legitimate, nondiscriminatory reason for the disparate treatment afforded Williams. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (ADEA context); *Aikens*, 460 U.S. at 714; *Burdine*, 450 U.S. at 254-55. Staples' burden is one of production, not of persuasion. *See Reeves*, 530 U.S. at 142.

Staples proffers as its legitimate, nondiscriminatory reason for rejecting Williams's check that, in light of its policy, the sales clerk who handled Williams's attempted transaction[7] must have made a

---

[6]Staples contends that Williams was not similarly situated to his white classmate. First, Staples argues that the classmate was not told, like Williams and the two testers, that Staples did not accept out-of-state checks. Of course the sales clerk made no such comment to the classmate, because the clerk instead accepted the classmate's out-of-state check. Second, Staples claims that the classmate and Williams attempted their transactions at different cash registers and were served by different sales clerks. It appears that the clerk who waited on the white classmate clocked out of work before Williams claims he attempted his transaction. The fact that Williams was served by a different clerk at a different register does not mean he was not similarly situated for purposes of establishing a prima facie case. It is sufficient that Williams has established that he presented his check to an agent of Staples and it was rejected while his white classmate also presented her check to an agent of Staples on the same day for similar merchandise and it was accepted. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (recognizing that a comparison of two separate incidents will likely never involve the exact facts and that a court should compare the more salient factors from both incidents).

[7]Staples does not admit that Williams's allegations are true. It merely assumes, for the purposes of this motion, that Williams did attempt to make a purchase by out-of-state check at the Winchester Staples and that

mistake in refusing to accept his check. We assume, without deciding, that this evidence suffices as a legitimate, nondiscriminatory reason for rejecting Williams's out-of-state check. *See, e.g.*, *Hawkins*, 203 F.3d at 278 (assuming arguendo that the plaintiff established a prima facie case).

Having assumed that Staples has offered a nondiscriminatory explanation for rejecting Williams's check, the presumption of discrimination raised by the prima facie case is rebutted and drops from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Accordingly, the sole remaining issue for our consideration becomes whether Williams can prove by a preponderance of the evidence that Staples rejected his check because he is an African-American. *See Reeves*, 530 U.S. at 142-43. To meet his burden, Williams must demonstrate by a preponderance of the evidence that the reason articulated by Staples was not its true reason for rejecting his check but was instead a pretext for race discrimination. *See id.* at 143; *Murrell*, 262 F.3d at 257. Williams may attempt to meet this burden by showing that Staples' proffered reason is not worthy of belief. *See Reeves*, 530 U.S. at 143. Even though the presumption of discrimination created by the prima facie case no longer exists, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case, and the reasonable inferences drawn therefrom, in determining whether the defendant's proffered explanation is pretextual and whether the defendant in fact unlawfully discriminated. *Id.* at 143, 147-48. In some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant's] asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated." *Id.* at 148.

We conclude that Williams has adduced sufficient evidence to suggest that the reason proffered by Staples is pretext for unlawful discrimination. Based on the record now before us, Johnson was the only female sales clerk working on the afternoon of Williams's attempted

the clerk informed him that Staples did not take out-of-state checks. Staples will be entitled at trial, if it presents admissible evidence to support such a defense, to refute the truthfulness of Williams's allegations supporting his prima facie case.

transaction who misunderstood Staples' policy. Yet, it appears that Johnson was not the clerk who waited on Williams. Johnson testified that whenever a customer presented an out-of-state check she was required to summon a manager. There is no evidence in the appellate record that the clerk who waited on Williams summoned a manager or that a manager came to the cash register where Williams was being served. All of the other female employees who were deposed who were working the afternoon of the attempted transaction understood that they were supposed to accept all checks — including out-of-state checks. Thus, all of these potential clerks understood Staples' policy, and it would not have been a "mistake" had they refused Williams's check.[8]

Moreover, Williams called the Winchester Staples upon discovering that his white classmate was allowed to use an out-of-state check. After hearing Williams's complaint, the manager told him that deciding whether to accept a check is a "judgment call" performed on a "case-by-case basis." According to this testimony, Staples did not have a policy of accepting all checks, as Staples now asserts, but instead allowed each sales clerk to decide whether to accept an out-of-state check based on her own personal judgments. This response suggests that the sales clerk who waited on Williams was not "mistaken" about Staples' stated policy, but was instead following Staples' de facto policy of deciding the matter on a case-by-case basis.

Not only do we conclude that Williams has adduced evidence that Staples' proffered reason was false, but also we hold that the evidence of the two testers tends to prove that the real reason Williams's check was rejected was because of his race. Williams was treated substantially the same as the African-American tester. They both presented out-of-state checks and were both told unequivocally that Staples

---

[8]Cook, the clerk who waited on the two testers, also testified that she knew that she was supposed to accept all checks — including out-of-state checks. According to the African-American tester, however, Cook refused to accept his check because it was from out-of-state. This evidence, if the jury believes the African-American tester's testimony, provides further evidence that Staples' sales clerks, who know that they should accept all checks, nevertheless refuse to accept out-of-state checks from African-Americans.

would not accept out-of-state checks. Staples refused to accept both checks for processing through the neutral check verification system. Conversely, Williams and the African-American tester were treated differently than the white tester, who was not told that Staples would not accept out-of-state checks. Instead, the white tester was told only that Staples did not "usually" accept out-of-state checks. The clerk immediately asked if the white tester had an alternative form of payment. When the white tester said he did not, the clerk, without being asked by the white tester, summoned the manager, who directed the clerk to accept the check for processing.[9] Viewed in the light most favorable to Williams, this evidence, combined with the evidence supporting Williams's prima facie case, shows that Staples accepts out-of-state checks from white customers but not from African-American customers. Of the customers we know of, the evidence suggests that every judgment call by Staples disadvantages only African-American customers. A rational fact finder could conclude, based on this evidence, that Staples unlawfully discriminated against Williams because of his race.

## V.

Viewing the evidence, and the reasonable inferences drawn therefrom, in the light most favorable to Williams, we conclude that Williams has sustained his burden of establishing a prima facie case and offering evidence that Staples' proffered legitimate, nondiscriminatory reason was pretext for unlawful discrimination. We reverse the district court's grant of summary judgment in favor of Staples and remand for further proceedings.

---

[9]The fact that the white tester's check was declined by the neutral check guarantee system has little relevance under the circumstances. As explained by Staples, it pays a third party to guarantee all checks — even out-of-state checks — and passes the potential liability for bad checks on to the third-party guarantor. The fact that the neutral check guarantee system declined the white tester's check after Cook accepted it is of no moment. What is important is that Cook accepted the white tester's check for processing but refused to accept the African-American's check for processing. By doing so, Cook treated the African-American tester less favorably than the white tester.

*REVERSED AND REMANDED*

WIDENER, Circuit Judge, concurring:

I concur in the result rather than the majority opinion for the sole reason that the employees who waited on Williams on the occasion complained of were not produced and have given no evidence, either by way of affidavit or otherwise.