**Robert LLOYD and Minire Lloyd, Plaintiffs,**

v.

**WAFFLE HOUSE, INC., Defendant.**

**No. CIV. 103CV237.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Dec. 10, 2004.

Henderson Hill, Corie D. Pauling, Ferguson, Stein, Chambers, Adkins, Gresham & Sumter, Charlotte, NC, Thomas J. Barton, Drinker Biddle & Reath, Philadelphia, PA, Susan E. Huhta, Washington Lawyers' Comm. for Civil Rights & Urban Affairs Equal Employment Opportunity Project, Gerald S. Hartman, Wendelyn L. Pizer, Drinker, Biddle & Reath, LLP, Washington, DC, for Plaintiffs.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Defendant's motions for summary judgment, to compel discovery, and to strike and Plaintiffs' motion to supplement the record.

### I. FACTUAL AND PROCEDURAL HISTORY

On June 30, 2002, at around 1:15 am, Robert Lloyd, a black male, and his wife, Minire Lloyd, a white female, ("Plaintiffs") arrived at the Waffle House restaurant off of Highway 108 in Columbus, North Carolina. Complaint, filed September 15, 2003, ¶ 10; Plaintiffs' Response to Defendant's Motion for Summary Judgment ["Plaintiffs' Response"], filed October 26, 2004, at 2–3. The Plaintiffs noticed there were five to seven cars in the parking lot; Plaintiff Minire Lloyd got out of the car and went inside the restaurant to determine whether or not the restaurant was too busy for them to be seated. Complaint, ¶ 11; Plaintiffs' Response, at 3. After determining the restaurant had available tables, the Plaintiffs decided to eat in at the restaurant, proceeded into the res-

taurant, and waited to be seated. Complaint, ¶¶ 13, 14; Plaintiffs' Response, *id.* The Plaintiffs observed three employees: two white female waitresses and one white male cook. Complaint, ¶ 11; Plaintiffs' Response, *id.* The Plaintiffs state that three to five tables were filled with patrons while one man sat at the counter. Plaintiffs' Response, *id.* The Plaintiffs recalled that most of these tables had been served while one of the tables was in the process of ordering. *Id.* After three to five minutes, the Plaintiffs sat themselves at the counter because the staff had not offered to seat them. *Id.* As they sat down, the two waitresses disappeared into the back of the restaurant. Defendant's Brief in Support of Motion for Summary Judgment ["Defendant's Brief"], filed October 1, 2004, at 4. After about 10 minutes, as the waitresses returned to the main part of the restaurant, the Plaintiffs, having not been approached for service at the counter, moved to a booth, believing that service was closed at the counter. *Id.;* Plaintiffs' Response, at 3.

Plaintiffs sat in the booth for about 30 minutes and were not served, approached or greeted by the Waffle House staff. Plaintiffs' Response, *supra.* During this 30-minute period, the Plaintiffs observed an altercation between a Waffle House patron and the police outside the restaurant in the parking lot. *Id.* The altercation outside held the Plaintiffs' attention as they waited for service in the booth. Defendant's Brief, at 5. They observed the young man be handcuffed by police after he appeared to become hostile with them and twice appear to free himself from the handcuffs to light a cigarette. *Id.* An additional police car also arrived at the scene during the altercation. *Id.* Plaintiff Robert Lloyd claimed that he did not pay attention as to what was going on in the restaurant while the altercation was taking place outside. *Id.,* at 6. Plaintiff Minire

Lloyd claimed she was also watching the altercation outside; but on four or five occasions, she turned around to see what was going on in the restaurant and wondered why they had not been served or even approached by the restaurant staff. *Id.* On these four or five occasions, she noticed the waitresses cashing other patrons out, getting orders, going to the back of the restaurant, and talking to one another. Exhibit 2, Deposition of Minire Lloyd ["Minire Lloyd Deposition"], dated April 26, 2004, *attached to* Defendant's Motion, at 88–89. The Plaintiffs also observed other patrons in the restaurant talking about and watching the events taking place outside. Defendant's Brief, *supra.*

At some point after the Plaintiffs arrived at the restaurant, a group of four white individuals walked into the restaurant. *Id.* They sat at a table next to the serving area where the waitress could take their order without coming out from behind the counter. *Id.,* at 6–7. The Plaintiffs observed this party having their orders taken by a waitress, and receiving their food while the Plaintiffs sat in their booth and were not approached by either of the waitresses. Plaintiffs' Response, at 4.

After the altercation in the parking lot had cleared, and the Plaintiffs observed the party arriving after them being served, Plaintiff Minire Lloyd approached the counter to get a waitress' attention. *Id.* As she approached the waitress at the cash register, Mrs. Lloyd testified the waitress turned to her and "lashed out at [her] and said how can I help you, in a very rude manner[.]" Minire Lloyd Deposition, at 89. Given the perceived manner in which the waitress spoke to Mrs. Lloyd, the Plaintiffs decided to leave the restaurant at that time. Plaintiffs' Response, at 5. Mr. Lloyd remembers looking at the clock on his cell phone as they left which read 1:58 am. *Id.*

The next day, the Plaintiffs contacted the manager of the Waffle House to complain about their treatment the night before. *Id.* Waffle House conducted an internal investigation, headed by its investigator Audrey Tassinari, and concluded that the poor service suffered by the Plaintiffs was the result of an inexperienced waitress overlooking them on a busy night. Exhibit 4, Declaration of Audrey Tassinari, *attached to* Defendant's Motion, at 5. The investigation did not find any evidence of discriminatory conduct by the Waffle House employees. *Id.* Plaintiffs were advised of this finding by a phone call and a letter and were given a gift certificate to the Waffle House. Plaintiffs' Response, at 5.

The Plaintiffs filed this action against the Waffle House on September 15, 2003, alleging racial discrimination in violation of 42 U.S.C. §§ 1981 and 2000a. On October 1, 2004, Waffle House filed a motion for summary judgment and a motion to compel the Plaintiffs to complete discovery; Plaintiffs have not responded to the motion to compel. Plaintiffs filed their response to Defendant's motion for summary judgment on October 25, 2004, and the Defendant has since filed a reply. The Defendant has also filed a motion to strike Exhibit 1 to the Plaintiffs' response to which the Plaintiffs have filed a response. Plaintiffs filed a motion to supplement the record and attached to the motion excerpts from the deposition of Nicholas D. Papala taken November 16, 2004, in a case against Waffle House pending in the United States District Court for the District of South Carolina at Greenville. Because the Court finds this supplement to be irrelevant to the issues here and did not consider the deposition in reaching the decision on summary judgment, the motion to supplement is denied.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where there is evidence, viewed in the light most favorable to the non-moving party, such that a reasonable jury could find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party "may not rest upon the mere allegations or denials of [their] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Unsupported allegations and speculation are not sufficient to defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

### A. Section 1981 Claim

Section 1981 guarantees "all persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 is implicated where a restaurant fails to serve an individual on account of their race. *See Wilkins v. Denamerica, Corp.*, 2001 WL 1019698, *8 (W.D.N.C.2001). Where a party alleges a violation of § 1981, but does not offer direct evidence of intentional discrimination, he must proceed under the framework of the *McDon-*

*nell Douglas* analysis.[1] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also, Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir.2004). Under the *McDonnell Douglas* framework, the party alleging discrimination must first prove a *prima facie* case of race discrimination. *Williams, supra.* To prove a *prima facie* case of race discrimination, a party must prove that:

> (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Id.,* at 667–68.

If the party alleging discrimination is able to prove a *prima facie* case, a rebuttable presumption that he was discriminated against arises. *Id.,* at 668. A defendant may then rebut this presumption by putting forth, "through the introduction of admissible evidence, a legitimate, non-discriminatory reason for the disparate treatment afforded [the complaining party]." *Id.* This burden is one of production and not persuasion. *Id.* If the defendant successfully rebuts the presumption of discrimination, the complaining party then has the burden of proving by a preponderance of the evidence that the proffered reason is pretext for discrimination. *Id.* The complaining party may demonstrate pretext by showing only that the proffered reason is not worthy of credence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Williams,* at 669 ("Williams may attempt to meet this burden by showing that Staples' proffered reason is not worthy of belief."); *Johnson v. Toys "R" US–Delaware, Inc.,* 95 Fed. Appx. 1, 8, 2004 WL 324545 (4th Cir.2004) ("Johnson may meet this burden by showing that the reason proffered by Toys "R" Us is not credible."). Pretext may also be shown by the introduction of other circumstantial evidence of discrimination. *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir. 2004).

### 1) *Prima Facie Case*

■ It is undisputed that the Plaintiffs have satisfied the first three elements of its *prima facie* case. As to the fourth element, an actionable denial of service, this Court has stated that:

> [i]t could reasonably be said that a customer who enters a restaurant for service is contracting for more than just food. [Section 1981] encompasses "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Dining in a restaurant includes being served in an atmosphere which a reasonable person would expect in the chosen place.... [I]n light of the clear illegality of outright refusal to serve, a restaurant which wishes to discourage minority customers must resort to more subtle efforts to dissuade ... efforts such as slow service, discourteous treatment, harassing comments and gestures and outright racial insults. In determining the scope of civil rights protection, courts must be guided by the holdings of the Supreme Court of the United States that the Civil Rights Act is to be afforded a liberal construction in order to carry out the purpose of Con-

---

1. It is undisputed that Plaintiffs have failed to put forth direct evidence of discrimination and, therefore, must proceed under the *McDonnell Douglas* framework. *See* Defendant's Brief, at 12; Plaintiffs' Response, at 8.

gress to eliminate the inconvenience, unfairness and humiliation of racial discrimination.

*Wilkins,* 2001 WL 1019698, at *8 (quoting *Charity v. Denny's, Inc.,* 1999 WL 544687, at *3–5 (E.D.La.1999)) (internal quotations omitted). Therefore, when entering the Waffle House, the Plaintiffs were contracting for more than just the service of food but also for timely service in a reasonable atmosphere and environment. Here, viewing the evidence in the light most favorable to the Plaintiffs, shows that the Plaintiffs sat at the counter and then in a booth for 45 minutes and were not offered service by the Waffle House waitresses, while white individuals entering after them were offered service, ordered, and were served their food by the same waitresses in the same period of time. The Plaintiffs were never approached by a waitress for service and were only arguably offered service after Mrs. Lloyd approached one of the waitresses. The Court finds that Plaintiffs have put forth evidence that their treatment by the Waffle House while they sat in the restaurant *"well exceeded* what an ordinary person would believe to be reasonable." *Wilkins, supra* at *9 (finding the plaintiffs' wait of over an hour to be served their order was unreasonable). Therefore, the Court finds that the Plaintiffs have sufficiently proven an actionable denial of service to satisfy the requirements of the *prima facie* case. *See Black v. Bonds,* 308 F.Supp. 774, 776 (S.D.Ala. 1969) (finding plaintiffs' 45 minute wait before voluntarily leaving, without ever being offered service, was basis for § 1981 claim); *Middlebrooks v. Univ. of Maryland,* 166 F.3d 1209, 1999 WL 7860, at *5 (4th Cir.1999) ("Plaintiff's burden of establishing a *prima facie* case of discrimination is not intended to be onerous.")

Defendant's arguments to the contrary fail to persuade the Court otherwise. Defendant argues that the Plaintiffs have failed to prove the final element of their *prima facie* case, a denial of the opportunity to enter into a contract for service. Instead, Defendant claims that Plaintiffs were offered service by the waitress before they left, but chose to leave the restaurant voluntarily, thus refusing the Defendant's offer. In support of its argument, Defendant has cited cases standing for the proposition that where a plaintiff voluntarily terminates a transaction or where he merely receives delayed service, he cannot sustain a claim for racial discrimination under § 1981(a). *See, Mendez v. Pizza Hut of America, Inc.,* 2002 WL 31236088, *1 (N.D.Ill.2002); *Shawl v. Dillard's Inc.,* 17 Fed.Appx. 908, 909–10, 2001 WL 967887 (10th Cir.2001); *LaRoche v. Denny's Inc.,* 62 F.Supp.2d 1366, 1368 (S.D.Fla.1999); *Jackson v. Tyler's Dad's Place, Inc.,* 850 F.Supp. 53, 55–57 (D.D.C.1994), *aff'd,* 107 F.3d 923, 1996 WL 678443 (D.C.Cir.1996); *Robertson v. Burger King, Inc.,* 848 F.Supp. 78, 79 (E.D.La.1994). However, the Court finds these cases inapplicable to the facts at issue here. The Lloyd's, like some of the plaintiffs cited above, voluntarily left after they were arguably offered service; unlike the Lloyd's, none of these plaintiffs were previously faced with an *unreasonable* wait while other individuals, arriving after them, were offered immediate service. Again, the Court finds that Plaintiffs have proven an actionable denial of service to satisfy the *prima facie* case of race discrimination.

### 2) *Defendant's Legitimate Non–Discriminatory Reason*

■ Given that the Plaintiffs have proven a *prima facie* case of race discrimination, the burden then shifts to the Defendant, to produce a legitimate, non-discriminatory reason for the disparate treatment provided. Here, Defendant has put forth evidence that the Plaintiffs

were merely overlooked by the Waffle House staff due to the inexperience of the waitress responsible for their table, the waitress' tendency to "panic" in stressful situations, and the busy and stressful conditions in the restaurant at that time.

### 3) *Plaintiffs' Burden to Prove Pretext*

■ Following the production by the Defendant of a non-discriminatory reason for the disparate treatment, the burden then shifts to the Plaintiffs to put forth evidence of Defendant's discriminatory motive or that the Defendant's proffered reason is unworthy of credence. Here, the Plaintiffs have put forth sufficient evidence to create a genuine issue of material fact as to whether the Defendant's proffered reasons are worthy of credence.

The Defendant, as evidence of the busy state of the restaurant that morning, points to statements in Robert Lloyd's deposition testimony that the waitresses were "moving all over the place" and "running back and forth." Exhibit 1, Deposition of Robert Lloyd ["Robert Lloyd Deposition"], dated April 26, 2004, *attached to* Defendant's Motion, at 144. However, other statements in Plaintiffs' respective depositions are evidence that the restaurant was not busy at that time. After Mrs. Lloyd first entered the Waffle House, while her husband was in the car, she returned to the car to tell him there were empty tables in the restaurant and that it was "not crowded" and "not busy." Minire Lloyd Deposition, at 33, 113. The Plaintiffs also testified that there were only five to seven cars in the parking lot, and only three to five tables filled inside the restaurant, with one man sitting at the counter. *Id.,* at 68, 71, 75–76; Robert

Lloyd Deposition, at 112, 125. Additionally, as Defendant points out in its brief, only one group of four individuals entered the restaurant during the time period the Plaintiffs waited to be served. Defendant's Brief, at 6.

Further, while Defendant claims the altercation involving the police outside of the restaurant distracted the waitresses, the Plaintiffs have offered evidence to the contrary. Mrs. Lloyd stated that when she turned away from observing the altercation outside, she saw the waitresses cashing patrons out, serving orders, heading towards the bathroom, and talking to one another. Minire Lloyd Deposition, at 88–89. Other than the Defendant's assertions, there is no evidence that the waitresses were distracted by the altercation or were ignoring the needs of other customers during this time period.[2] Mrs. Lloyd's deposition testimony is the only evidence of what the waitresses were doing while the altercation was taking place as Mr. Lloyd stated he did not observe their conduct during this period. Other than Defendant's assertions in its brief, there is no testimony by any waitress, either by deposition or affidavit, submitted as to this issue.

The Plaintiffs' evidence also contradicts Defendant's proffered reason that the waitress overlooked them. Mrs. Lloyd stated in her deposition that the waitress "clearly saw [them]," and "knew [they] were there the whole time." Minire Lloyd Deposition, at 97, 180. Again, this is the only evidence before the Court at this time regarding whether the Plaintiffs were observed by the Waffle House staff.

In sum, the Court finds that Plaintiffs have met their burden under the *McDon-*

---

**2.** There is evidence that a waitress made a mistake regarding the number of eggs ordered by a patron in the restaurant, but the Court does not find this evidence alone, in light of the other evidence before it, dictates a finding that the waitresses were distracted by the altercation outside or overwhelmed by a busy restaurant.

*nell Douglas* framework. The Court finds there is a genuine issue of material fact as to whether the Defendant's proffered reasons for the disparate treatment of the Plaintiffs are worthy of credence, and, therefore, denies Defendant's motion for summary judgment.

### B. Injunctive Relief and Punitive Damages

The Court declines to rule on Defendant's summary judgment motions regarding the availability of injunctive relief under § 2000a and punitive damages under any of Plaintiffs' claims until all evidence is presented at trial and is before the Court.

### III. DEFENDANT'S MOTION TO COMPEL

A motion to compel discovery must be filed within the discovery deadline. Defendant's motion to compel Plaintiff to provide complete answers and responses to certain of Defendant's interrogatories and requests for production was filed on October 1, 2004, 16 days after the discovery deadline set forth in the Pretrial Order and Case Management Plan. Therefore, Defendant's motion to compel is denied.

### IV. DEFENDANT'S MOTION TO STRIKE

Defendant moves the Court to strike Exhibit 1 to Plaintiff's Response to Defendant's motion for summary judgment. Plaintiff's Exhibit 1 is a complaint and affidavit filed in a case currently pending in the United States District Court for the Northern District of Georgia at Atlanta. The complaint and affidavit allege, in part, that Waffle House investigator Audrey Tassinari, the same investigator assigned by Waffle House to investigate the charges here and who has filed a declaration concerning her investigation with the Court in this matter, demanded, threatened, and ul-

timately terminated the employment of a Waffle House employee for failing to change a statement in which she described witnessing discriminatory conduct by other Waffle House employees.

The Court will rule on the admissibility of any testimony or other evidence regarding this Georgia federal case when or if such testimony or evidence is presented during trial. Prior to the Court's ruling that such testimony or evidence is admissible, the Plaintiff is instructed that it shall make no reference to the Georgia action before the jury.

### V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motions for summary judgment and to compel are hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's motion to strike is **DENIED** without prejudice to renewal.

**IT IS FURTHER ORDERED** that the Plaintiffs' motion to supplement the record is hereby **DENIED**.