**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-2505

ROBERT C. SANDERS,

Plaintiff - Appellant,

versus

WOLFGANG MUELLER; OLSMAN, GANOS & MUELLER,
P.C.,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge.
(CA-01-2813-MJG)

Argued:  December 1, 2004          Decided:  March 4, 2005

Before WILKINS, Chief Judge, and MOTZ and SHEDD, Circuit Judges.

Reversed in part, affirmed in part, and remanded by unpublished
opinion.  Judge Shedd wrote the opinion, in which Chief Judge
Wilkins and Judge Motz joined.

**ARGUED:** Robert Clagett Sanders, Upper Marlboro, Maryland, Appellant
Pro Se.  Leonard A. Orman, Baltimore, Maryland, for Appellees.  **ON
BRIEF:** Steven R. Freeman, FREEMAN, WOLFE & GREENBAUM, P.A., Towson,
Maryland, for Appellant.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

SHEDD, Circuit Judge:

Robert Sanders, a Maryland attorney, filed suit against Olsman, Ganos & Mueller ("OGM"), a Michigan law firm, claiming entitlement to a share of attorneys fees recovered by OGM for representing clients in three separate personal injury cases -- the Ambrose, Greer, and Holtquist cases. The district court granted summary judgment in favor of OGM on Sanders' claim for attorneys fees in the Greer and Holtquist cases. After the jury awarded Sanders $300,000 for the reasonable value of the services he rendered in the Ambrose case, the district court granted OGM's motion for judgment as a matter of law on the issue of damages and reduced Sanders' award to $1. For the following reasons, we reverse the grant of judgment as a matter of law in favor of OGM in the Ambrose case, reverse the grant of summary judgment in favor of OGM in the Greer and Holtquist cases on Sanders' breach of contract claims, and affirm the grant of summary judgment in the Greer and Holtquist cases on Sanders' quantum meruit and unjust enrichment claims.

I.

Because we are reviewing a grant of judgment as a matter of law and summary judgment, we view the evidence in the light most favorable to Sanders. See Anderson v. G.D.C., Inc., 281 F.3d 452, 457 (4th Cir. 2002) (judgment as a matter of law); Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (summary judgment). In 1995, Sanders' young daughter was killed in a low-impact

2

automobile collision. Sanders claims that his daughter's death resulted from the deployment of the air bag in his Chrysler minivan rather than from the force of the collision. Soon after his daughter's tragic death, Sanders helped form a public interest group to lobby Congress to require air bag warnings in vehicles and to strengthen federal air bag performance requirements.

Sanders also retained Wolfgang Mueller, a former Chrysler engineer and an associate at OGM, to file a products liability lawsuit against Chrysler.[1] Although Mueller was a young lawyer who had never handled an air bag case, Sanders liked his technical background and aggressiveness. Mueller agreed to allow Sanders to participate in preparing the case for trial.

As a result of Sanders' involvement with his lobbying group, he came into contact with several families across the nation whose children had been killed or injured in accidents involving air bag deployments. If the families inquired about filing a lawsuit, Sanders referred them to Mueller. Sanders first recommended Mueller to Richard Kaplan, whose son suffered an eye injury from an air bag deployment. Although Sanders did not request any fee, Mueller wrote a letter to Sanders offering to pay him one-third of any attorney's fees recovered, which Mueller represented to be the typical arrangement in Michigan. Kaplan's son recovered from his injury,

---

[1]Sanders also sued Mueller in this action. The district court dismissed all claims against Mueller, and Sanders does not challenge that ruling.

and the case was not prosecuted. Sanders thereafter recommended Mueller to several other families, including the Ambroses from Tennessee and the Greers from Idaho. The Ambroses were originally represented by a law firm in Nashville, Tennessee. Sanders introduced Mueller to the Nashville firm, and ultimately the Nashville firm retained OGM as co-counsel in the Ambrose case. As agreed between these two firms, OGM would receive 55% and the Nashville firm would receive 45% of attorneys fees recovered in the Ambrose suit. The Greers were not represented by local counsel, so they directly retained Mueller of OGM. After the Ambroses and the Greers retained Mueller, Mueller confirmed that Sanders would be allowed to perform legal work on these two cases and would receive the same one-third share of OGM's fees that Mueller had promised in the Kaplan case.

In April 1997, Mueller and Jules Olsman, the sole shareholder of OGM, proposed to modify their fee-sharing arrangement with Sanders. OGM explained that it did not want to have a straight one-third fee agreement with Sanders in the Ambrose case because it would not be financially feasible in light of its other fee-sharing agreement with the Nashville firm. OGM instead proposed that Sanders' fee in the Ambrose case would be based on the "totality of the circumstances," including how much work Sanders performed in the case, his role in referring the client to OGM, how much of the litigation expenses he paid, and several other factors. Depending on how these factors weighed, Sanders could receive less than one-

4

third or more than one-third of OGM's fee.  By contrast, in cases such as Greer, where OGM was not retained by local counsel, Sanders' fee would remain the standard one-third.  Moreover, OGM would allow Sanders to perform legal work on all the cases.

After agreeing to this modification, Sanders recommended Mueller to the Holtquists, a Minnesota family whose child had died in an air bag accident.  Mueller again confirmed that Sanders would be allowed to participate in the legal work on the case and would receive one-third of the fees recovered by OGM.

The Ambrose case in Nashville was the first case scheduled for trial.  All the attorneys representing the Ambroses agree that the case was hotly disputed and extraordinarily time-consuming.  In the two years leading up to trial in Tennessee state court, the lead partner in the Nashville firm spent half her time working on the Ambrose case.  Mueller took nearly sixty depositions across the nation.  Sanders discussed with Mueller the possibility of preparing a motion for partial summary judgment on the issue of liability. Mueller enthusiastically agreed with this strategy and sent Sanders several boxes of technical documents and deposition transcripts. Sanders spent half of his work days for the next six months reviewing and analyzing the technical background information on air bags that Mueller had sent and that he had discovered in his own research.  For the following three months he worked full-time drafting almost fifty versions of the partial summary judgment motion.  During this period, Sanders worked closely with Mueller,

5

talking with him by telephone at least once every day. Sanders sent at least three drafts of the motion to Mueller for review and comment. The final motion advanced several technical arguments and was accompanied by nearly 1,000 pages of supporting documentation. Shortly before the scheduled trial, Mueller filed the Sanders motion on behalf of the Ambroses. Although the Tennessee court denied the motion, Mueller considered the motion to be worthwhile. Sanders also prepared several other pretrial motions to exclude certain defense evidence at trial as well as other filings to ensure admission of evidence helpful to the Ambroses. Further, Sanders traveled to Tennessee to attend and critique a mock trial. As the trial date neared, Mueller also asked Sanders to make plans to attend the trial to lend his expertise and counsel. Sanders calculated that he worked a total of nearly 1,500 hours on the Ambrose case. The vast majority of that time was spent researching and drafting the motion for partial summary judgment.

Four days before trial and soon after the motion for partial summary judgment was denied, the Ambrose case settled. OGM and the Nashville firm recovered more than $1 million in attorneys fees, with OGM receiving more than $550,000 and the Nashville firm receiving more than $450,000.

Sanders requested from OGM his share of the attorneys fees that OGM recovered. Olsman refused to pay Sanders any amount that could be considered a referral fee. Instead, Olsman asked Sanders to verify how much time he expended on the case. Olsman assured

Sanders that, once Olsman determined the amount of the fee for "the work and technical assistance" Sanders performed, Sanders would find the amount "to be significant and appropriate."

Although it had no fee-sharing agreement with Sanders, the Nashville law firm paid Sanders $20,000. Sanders claims this payment was a gift from the Nashville firm in appreciation for his valuable work on the case.

In October 1998, OGM and Sanders reached an impasse on the amount of fees Sanders should receive in the Ambrose case. Olsman disavowed any agreement to pay Sanders any fee in the Greer and Holtquist cases and informed Sanders that he would not be allowed to perform any legal work on those pending cases. More than a year later, the Greer and Holtquist cases settled, and OGM recovered attorneys fees in both cases.

## II.

Sanders filed this lawsuit against OGM seeking recovery of his share of attorneys fees in the Ambrose, Greer, and Holtquist cases on several different theories, including breach of contract, quantum meruit, and unjust enrichment. The district court granted summary judgment in favor of OGM on Sanders' claim for attorneys fees in the Greer and Holtquist cases. As for the breach of contract claims, the court ruled that the fee-sharing agreement between Sanders and OGM violates two provisions of Rule 1.5(e) of the Maryland Lawyers

Rules of Professional Conduct (MLRPC) because (1) Sanders failed to notify the Greers and the Holtquists that he would be performing legal work on their cases; and (2) Sanders' work on those cases was not proportionate to the one-third fee that he would receive under the fee-sharing agreement. The district court further found that OGM was entitled to the protection of a Maryland equitable defense to the contract claims. Accordingly, the district court declared the fee-sharing agreement between OGM and Sanders unethical and unenforceable. The district court also ruled that Sanders' quantum meruit and unjust enrichment claims failed because Sanders did not perform any work on the Greer and Holtquist cases.

Sanders' claim for fees in the Ambrose case was tried to a jury on two alternative theories, breach of contract and quantum meruit. The district court instructed the jury to award Sanders "the fair value of the services rendered" by him. The jury awarded Sanders $300,000. OGM filed a post-trial motion for judgment as a matter of law. Although the district court concluded that Sanders had presented sufficient evidence to prevail on the issue of liability, it granted OGM's motion as to damages, concluding that Sanders had failed to present "evidence from which a reasonable jury could determine with any reasonable degree of certainty the fair value of his services in any amount in excess of" the $20,000 the Nashville law firm had already paid to Sanders. Based on its ruling that

8

Sanders proved liability but not damages, the district court awarded Sanders nominal damages of $1.  This appeal followed.


                              III.

    In a diversity action, state law of the forum court governs substantive issues, and federal law governs procedural issues. Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).  Accordingly, we apply the law of Maryland to determine the substantive issues in this appeal.

    We review the district court's grant of judgment as a matter of law de novo.  Corti v. Storage Tech. Corp., 304 F.3d 336, 341 (4th Cir. 2002).  In conducting our review, we view the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  G.D.C., Inc., 281 F.3d at 457. Judgment as a matter of law is appropriate only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a).

    We also review de novo the district court's grant of summary judgment.  Staples, Inc., 372 F.3d at 667.  "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence."  Id.  Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party

                               9

is entitled to judgment as a matter of law.  Edell & Assocs. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 436 (4th Cir. 2001).

IV.

We first address the district court's grant of judgment as a matter of law in favor of OGM on Sanders' claim for attorneys fees in the Ambrose case.  Because OGM has not cross-appealed the judgment for Sanders as to liability, the only issue before us is whether, under either a breach of contract or quantum meruit theory, there is a legally sufficient evidentiary basis for the jury's conclusion that Sanders is entitled to $300,000 in fees.

Under Maryland law, recovery in quantum meruit[2] is based on the amount that the parties intended as the contract price or, if that amount is not expressed, "the fair market value of the plaintiff's services."  Mogavero v. Silverstein, 790 A.2d 43, 53 (Md. Ct. Spec. App. 2002); see also Houston v. Monumental Radio, Inc., 148 A. 536, 543 (Md. 1930) (noting that under an implied-in-fact contract

_____

[2]Under Maryland law, a quantum meruit claim based on an implied-in-fact contract is an alternative to recovery based on breach of an express contract.  See Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs, 843 A.2d 252, 295 (Md. Ct. Spec. App. 2004). We choose to base our opinion on Sanders' quantum meruit cause of action because we question whether the parties' agreement to share fees based on the "totality of the circumstances" is sufficiently definite to be an enforceable express contract under Maryland law.  See Peoples Drug Stores v. Fenton Realty Corp., 62 A.2d 273, 276 (Md. 1948).  Because we conclude that the jury verdict can be sustained under quantum meruit, we need not decide the breach of contract issue.

10

appellant was entitled to the "reasonable worth of [his] services").[3] Moreover, when a plaintiff is employed to perform specified work, he is entitled to recover in quantum meruit the value of his time and effort without reference to the benefit or advantage actually conferred on the defendant. Mogavero, 790 A.2d at 53.

The parties do not dispute that the total attorneys fees of more than $1 million is a reasonable fee award in the Ambrose case. The district court informed the jury of this amount, and the jury was never instructed that it could question the reasonableness of these fees. In essence, the jury was instructed to consider this total fee as the reasonable value for the amount of time and effort expended by all of the attorneys who performed legal work on behalf of the Ambroses. The question in this case thus becomes what is the fair market value of Sanders' time and effort compared to the time and effort of all the other attorneys who represented the Ambroses.

---

[3]Maryland law distinguishes between two types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment). Mogavero, 790 A.2d at 52-53. One of the primary differences between the two claims is the proper measure of damages. Unjust enrichment is measured by the gain bestowed on the defendant, while quantum meruit is measured by the reasonable value of the work performed by the plaintiff. Id. Although Sanders' complaint and papers refer to both quantum meruit and unjust enrichment, the case was tried to the jury and argued to this court as a quantum meruit claim, so we decline to consider any potential unjust enrichment claim for fees in the Ambrose case.

11

Viewed in the light most favorable to Sanders, the evidence showed that Sanders' "time, energy and effort" constituted approximately fifty percent of the total legal services performed by all the attorneys on behalf of the Ambroses. Based on this evidence, the jury could reasonably find that Sanders was entitled to at least $500,000 of the more than $1 million awarded for attorneys fees in the Ambrose case. Thus, we conclude that there is sufficient evidence from which a jury could find that the reasonable value of the services rendered by Sanders, compared with the work performed by the other lawyers, was at least $300,000.[4] Accordingly, we reverse the district court's grant of judgment as a matter of law in favor of OGM.

V.

We next review the district court's grant of summary judgment in favor of OGM on Sanders' claims of breach of contract and quantum meruit and unjust enrichment as to the Greer and Holtquist cases.

---

[4]The jury was not required to articulate how it reached its award. It is sufficient for our review that the jury could have awarded an even greater amount.

Although OGM denies that it ever contracted to pay any fees to Sanders in the Greer and Holtquist cases,[5] the evidence, when viewed in the light most favorable to Sanders, shows that OGM agreed to pay Sanders a one-third fee and to allow him to perform legal work in both cases. Assuming for purposes of summary judgment that the contract existed, OGM raised MLRPC 1.5(e) as a defense, asserting, in effect, that it would be inequitable for its alleged agreement with Sanders to be enforced. The district court granted summary judgment by determining, as a matter of law, that the agreement made by OGM and Sanders was a "clear and flagrant" violation of MLRPC 1.5(e), and that "non-enforcement of these invalid agreements would not lead to a 'manifestly unjust or unfair' result."

MLRPC 1.5(e) governs fee-sharing agreements. It states:

e) A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

---

[5]On remand, OGM will be allowed to pursue this defense. If the factfinder determines that the parties never agreed to share fees in the Greer and Ambrose cases, then the issues regarding compliance with MLRPC 1.5(e) will become moot.

Under Maryland law, the MLRPC "constitutes an expression of public policy having the force of law." Post v. Bregman, 707 A.2d 806, 816 (Md. 1998). MLRPC 1.5(e) "is not limited to disciplinary proceedings. It may extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e) unenforceable." Id. at 818. A violation of MLRPC 1.5(e) is not, however, a per se defense to the enforceability of a fee-sharing agreement. Id. at 819. A court may not invalidate a fee-sharing agreement merely because the agreement fails to comply with all the requirements of MLRPC 1.5(e); instead "[p]arties have the right to make their contracts in what form they please, provided they consist with the law of the land; and it is the duty of the courts so to construe them, if possible, as to maintain them in their integrity and entirety." Id. (quoting Webster v. People's Loan, Sav. & Deposit Bank, 152 A. 815, 817 (Md. 1931)). Thus, instead of a per se defense, Rule 1.5(e) is "in the nature of an equitable defense, and principles of equity ought to be applied." Post v. Bregman, 707 A.2d at 819. A court must not declare invalid a fee-sharing agreement for violations "that are merely technical, incidental, or insubstantial or when it would be manifestly unfair and inequitable not to enforce the agreement." Id. When a party raises this defense, the court must review the totality of the circumstances to determine whether (1) MLRPC 1.5(e) has actually been violated and, if so, (2) whether seven specified

14

factors militate in favor of declaring the agreement unenforceable. Id.

Based on this test, we must first decide whether the parties' fee-sharing agreement violates MLRPC 1.5(e). Under MLRPC 1.5(e), an oral fee-sharing agreement is valid only if: (1) the division of labor is in proportion to the services performed by each lawyer; (2) the client is advised of and does not object to the participation of the lawyers who have agreed to share fees; and (3) the total amount of attorneys fees is reasonable. The third factor is not at issue, because the parties agree that the total attorneys fees in the Greer and Holtquist cases are reasonable.

As for the first factor, whether the division of labor is proportionate with the services performed by each lawyer, Sanders contends that OGM deprived him of the opportunity to participate in the cases when it disavowed the fee-sharing agreement and prohibited him from working on the Greer and Holtquist cases.[6] The argument necessarily follows that OGM, as the breaching party, cannot assert Sanders' failure to perform approximately one-third of the legal work on those two cases. We agree.

---

[6]Sanders also argues that he indirectly worked on the Greer and Holtquist cases while he was working on the Ambrose case because all three cases were similar. Even if we agreed that Sanders worked on the Greer and Holtquist cases, there is no evidence in the record showing that his participation was proportionate with the agreed one-third fee.

15

Because Sanders recommended Mueller to the Greers and the Holtquists, OGM agreed to share one-third of its fees with Sanders and also agreed that Sanders would be allowed to work on the two cases. Because OGM thereafter repudiated the agreement, depriving Sanders of the opportunity to perform any work on the two cases, OGM is estopped from asserting that Sanders failed to perform his required proportionate share of the work to satisfy MLRPC 1.5(e)(1). See Parker v. Columbia Bank, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992) (Motz, J.) (stating that Maryland law "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."); see also Edell & Assocs., 264 F.3d at 444.

The second factor is whether the client was advised of and did not object to the participation of Sanders as a lawyer in the case. In his deposition, Sanders testified that he told Mr. Greer that he was working on his case. Sanders also testified that he believed he "must have discussed" the fact of his participation in the case with Mr. Holtquist. From this evidence, a reasonable jury could find that Sanders informed the two clients that he would be working on their cases. Also, there is no evidence in the record that either the Greers or Holtquists objected to Sanders' participation.

Thus, when viewed in the light most favorable to Sanders, a reasonable jury could find that the fee-sharing agreement entered into by OGM and Sanders did not violate either of the two factors

16

in dispute.  The evidence shows that a fee-sharing agreement existed and that OGM's breach of that agreement kept Sanders from performing a proportionate share of the work to justify the one-third fee, so that OGM is estopped from asserting otherwise.  The evidence also shows that the Greers and Holtquists were informed of Sanders' participation, and there is no evidence that they objected.  Because a reasonable jury could find that MLRPC 1.5(e) was not violated, the district court's grant of summary judgment in favor of OGM on Sanders' breach of contract claim must be reversed.

Even if we were to find that the fee-sharing agreement violated MLRPC 1.5(e), we would nonetheless reverse summary judgment because there is evidence, when viewed in the light most favorable to Sanders, that would make several, if not all, of the enumerated factors of the equitable defense militate in favor of enforcing the fee-sharing agreement.[7]  See In re Apex Express Corp. v. The Wise Co., 190 F.3d 624, 636 (4th Cir. 1999)(reversing summary judgment because genuine issues of material fact existed relating to equitable defenses).  Once a court determines that the fee-sharing agreement violates MLRPC 1.5(e), it must also consider the following seven factors to decide, based on equitable principles, whether the agreement should not be enforced:

---

[7]Sanders also argues that the district court improperly placed on him the burden of proof as to the equitable defense raised by OGM.  We leave this issue to the district court to decide in the first instance on remand.

17

(1) the nature of the alleged violation, (2) how the violation came about, (3) the extent to which the parties acted in good faith, (4) whether the lawyer raising the defense is at least equally culpable as the lawyer against whom the defense is raised and whether the defense is being raised simply to escape an otherwise valid contractual obligation, (5) whether the violation has some particular public importance, such that there is a public interest in not enforcing the agreement, (6) whether the client, in particular, would be harmed by enforcing the agreement, and, in that regard, if the agreement is found to be so violative of the Rule as to be unenforceable, whether all or any part of the disputed amount should be returned to the client on the ground that, to that extent, the fee is unreasonable, and (7) any other relevant considerations.

Post v. Bregman, 707 A.2d at 819.  There is evidence, for example, that would firmly establish the fourth factor -- perhaps the most important of the seven factors -- in favor of Sanders.  The fourth factor requires the court to consider "whether the lawyer raising the defense is a least equally culpable [for the violation] as the lawyer against whom the defense is raised and whether the defense is being raised simply to escape an otherwise valid contractual obligation."  Id.  Sanders has produced evidence that OGM was at least as culpable, if not more so, for the alleged violations of MLRPC 1.5(e).  As for failing to inform the Greers and Holtquists of Sanders' participation, OGM had the same opportunity, if not more, to inform them but declined to do so.  OGM was lead counsel on the cases and had much more contact with the clients.  OGM had a written contract with the Greers and the Holtquists, which specifically allowed OGM to hire counsel to assist on the case.  A reasonable factfinder could deem OGM more culpable than Sanders for

18

failing to inform the clients about Sanders' proposed participation. As for the other alleged violation, the lack of proportionate work, Sanders produced evidence that he was ready and eager to work on the cases but OGM prohibited him from participating after the fee dispute in Ambrose arose. Also, Sanders' evidence suggests that the main reason that OGM is now raising the equitable defense of MLRPC 1.5(e) is to keep it from having to pay Sanders the fees it promised to pay him in the Greer and Holtquist cases. Because genuine issues of material fact exist as to whether the seven factors militate in favor of declaring the fee-sharing agreement unenforceable, the district court's grant of summary judgment must be reversed. See Edell & Assocs., 264 F.3d at 442-43 ("Of course, the nature of [the] ethical considerations would require a jury to resolve factual issues raised by those considerations before actually considering the merits of the defense" of MLRPC 1.5(e)).

B.

Last, we affirm the district court's grant of summary judgment on Sanders' quantum meruit and unjust enrichment claims in the Greer and Holtquist cases. Sanders has failed to produce any evidence that he worked directly on the Greer and Holtquist cases. Moreover, although Sanders argues in a conclusory fashion that his work on the Ambrose case would have benefitted the prosecution of the Greer and Holtquist cases, he has failed to produce any concrete evidence that

19

his work on the Ambrose case would have had any direct relevance to the specific issues and claims in the Greer and Holtquist cases.

VI.

For the foregoing reasons, we reverse the district court's grant of judgment as a matter of law in the Ambrose case and its grant of summary judgment on the breach of contract claims in the Greer and Holtquist cases. We affirm the district court's grant of summary judgment in favor of OGM on Sanders' quantum meruit and unjust enrichment claims in the Greer and Holtquist cases.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED