Michael **SLOCUMB**, Elise Slocumb, Cole Gloster, a minor child, by his mother and next friend, Elise Slocumb, Chloe Slocumb, a minor child, by her mother and next friend, Elise Slocumb, and Carerra Slocumb, a minor child, by her mother and next friend, Elise Slocumb, Plaintiffs,

v.

**WAFFLE HOUSE, INC., Defendant.**

**No. 1:03–CV–1373–WSD.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 15, 2005.

---

Alysa Beth–Ann Freeman, David C. Ates, Miller Billips & Ates, Atlanta, GA, Christine D. Bell, Wendelyn Lee Pizer, Drinker Biddle & Reath, Washington, DC, Corie D. Pauling, Henderson Hill, Ferguson Stein Chambers Atkins Gresham & Sumter, Charlotte, NC, Mary E. Kohart, Thomas J. Barton, Viktoriya Meyerov, Patricia Proctor, Drinker Biddle & Reath, Philadelphia, PA, for Plaintiffs.

Cynthia G. Burnside, David E. Gevertz, Nancy E. Rafuse, R. Lawrence Ashe, Jr., Sandra Kim, William Bradley Hill, Jr., Ashe Rafuse & Hill, Atlanta, GA, for Defendant.

### *ORDER*

DUFFEY, District Judge.

This matter is before the Court on Defendant Waffle House, Inc.'s ("Defendant" or "Waffle House") Motion for Summary Judgment [90], Plaintiffs Michael Slocumb, Elise Slocumb, Cole Gloster, Chloe Slocumb and Carerra Slocumb's ("Plaintiffs" or the "Slocumbs") Opposition to Defendant's Motion for Summary Judgment [99], and Waffle House's Reply[1] in Sup-

---

1. Defendant also filed a Motion to Exceed the Page Limitation for Defendant's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment [115]. The Court grants Defendant's motion to exceed the page limitation.

port of its Motion for Summary Judgment [117].[2]

## I. BACKGROUND

Plaintiffs claim they were denied service at Waffle House Restaurant # 1059 in Darien, Georgia (the "Darien Waffle House"). Plaintiffs have brought claims for discrimination in public accommodations under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.

The Slocumbs are an African–American family from Augusta, Georgia. (Pls.' Statement of Disputed and Undisputed Facts in Support of their Opp. to Def.'s Mot. for Summ. J. ("Pls.' Statement of Facts") ¶¶ 1, 3.) The Slocumbs allege the following facts on which their claims are based.

On June 1, 2001,[3] the Slocumbs visited the Darien Waffle House on their way to Orlando, Florida, for a family vacation to Disney World. (Waffle House's Statement of Undisputed Facts in Support of its Mot. for Summ. J. ("Def.'s Statement of Facts") ¶ 1.) The Slocumbs left their home in the early morning and drove approximately four hours before stopping at the Darien Waffle House for breakfast. (Pls.' Statement of Facts ¶ 3; Def.'s Statement of Facts ¶¶ 2, 4.) Mr. Slocumb entered the Darien Waffle House while Mrs. Slocumb stayed in the car to wake and dress the three children. (Def.'s Statement of Facts ¶ 6.)

A white elderly couple entered the Darien Waffle House shortly after Mr. Slocumb. (Pls.' Statement of Facts ¶ 6; Def.'s Statement of Facts ¶ 9.) The elderly gentleman stood next to a dirty, unoccupied table, and approximately a minute later a waitress cleared the dirty dishes from the table and the gentleman and his female companion sat down. (Pls.' Statement of Facts ¶ 7.) Mr. Slocumb then walked to another dirty, unoccupied table and stood next to the table. (Defs.' Statement of Facts ¶ 10.) A waitress served beverages to the elderly couple who were seated at the table next to Mr. Slocumb, and then took the couple's orders. (Pls.' Statement of Facts ¶ 10.) A waitress removed the tip from Mr. Slocumb's table. (Id. ¶ 11.) Mr. Slocumb attempted to get the attention of the staff at the restaurant by stating "Hey, is someone going to acknowledge me?" (Id.) During this time, another white couple entered the restaurant, sat down at a booth, and had their orders taken. (Id. ¶ 12.)

Mrs. Slocumb and the three children entered the restaurant approximately fifteen minutes after Mr. Slocumb's entrance. (Id. ¶ 13.) The Slocumbs did not observe any other African Americans in the restaurant. (Id. ¶ 14.) Mrs. Slocumb observed three servers and one cook, all of whom were white. (Id. ¶ 15.) One of the three servers left through a door behind the kitchen. (Id.) Mrs. Slocumb and the

2. Also before the Court are Waffle House, Inc.'s Notice of Objection to Admissibility of Evidence [116], Plaintiffs' Response to Waffle House, Inc.'s Notice of Objection to Admissibility of Evidence, filed July 13, 2004, and Waffle House, Inc.'s Reply in Support of its Notice of Objection to Admissibility of Evidence [121]. The Court has taken notice of the objections and will consider the challenged evidence only to the extent it is properly before the Court and relevant to the current proceedings. Further objections by Defendant to the introduction of this evidence at

trial can be brought before the Court by appropriate pre-trial motions.

3. On January 10, 2005, the Court held an evidentiary hearing to determine when the alleged incident took place. Plaintiffs initially alleged the incident took place on May 22, 2001, but subsequent evidence suggested it actually occurred on June 1, 2001. The parties agreed at the evidentiary hearing that any alleged incident occurred, if at all, on June 1, 2001. (See Evidentiary Hearing Tr. [143].)

three children did not wait with Mr. Slocumb next to the table, but instead sat close to the cash register. (*Id.* ¶ 16.)

After the first elderly couple left, another young white couple entered and sat at that table. (*Id.* ¶ 17.) The waitress cleared the table, took the new couple's orders and served them food while Mr. Slocumb continued to stand next to the table at which he was positioned. (*Id.*) Another table large enough to accommodate the Slocumbs remained uncleaned while the Slocumbs were in the restaurant. (*Id.* ¶ 19.) After Mrs. Slocumb had been in the restaurant approximately fifteen minutes,[4] Mrs. Slocumb approached the cash register and asked a waitress, "Excuse me, is anyone going to acknowledge my husband?" (Pls.' Statement of Facts ¶ 20; Def.'s Statement of Facts ¶ 21.) The waitress did not respond to Mrs. Slocumb's question, (Pls.' Statement of Facts ¶ 21), but did not appear to be assigned to the booths where Mr. Slocumb was standing. (Def.'s Statement of Facts ¶ 24.) Mr. Slocumb again asked if someone was going to acknowledge him, and a waitress looked up when he spoke but did not respond. (Pls.' Statement of Facts ¶ 23.)

The Slocumbs waited approximately ten more minutes before deciding to leave. (*Id.* ¶ 25.) In total, they claim they had waited approximately 45–60 minutes before leaving the restaurant. (*Id.* ¶ 27.) The Slocumbs never attempted to speak to a manager before leaving. (Def.'s Statement of Facts ¶ 29.) Upon being told they were leaving, Cole Slocumb asked, "Why are we leaving? Is it because we're black?" (Pls.' Statement of Facts ¶ 26.) A waitress looked at the Slocumbs after Cole Slocumb made this statement, but did not respond. (*Id.*) No Waffle House employee spoke to the Slocumbs while they were in the Darien Waffle House, and the Slocumbs never heard anyone talk about the Slocumbs. (*Id.* ¶ 28; Def.'s Statement of Facts ¶ 36.) The Slocumbs believed they would not be served even if they remained in the restaurant. (Pls.' Statement of Facts ¶ 25.)

Before exiting the restaurant, Mrs. Slocumb noted a 1–800 number for the Waffle House corporate office and, immediately upon exiting the restaurant, called from her cellular telephone to report to Waffle House headquarters that her family had not been served because of their race. (Pls.' Statement of Facts ¶ 29; Def.'s Statement of Facts ¶ 35.) During this call Mrs. Slocumb reported her address and telephone number and a brief description of what they allege occurred in the Waffle House. (Pls.' Statement of Facts ¶ 30.)

Waffle House wrote to Mrs. Slocumb to acknowledge receipt of the discrimination complaint and enclosed a questionnaire, to which Plaintiffs did not respond. (*Id.* ¶ 35.) Valencia Porter, a Waffle House Vice President and Employment Counsel, assigned Carol Fouser to investigate the Slocumbs' complaint. (*Id.* ¶ 37.) Mrs. Fouser interviewed some of the employees on duty during the Slocumbs' visit. (*Id.* ¶ 38.) Ms. Fouser concluded that there was no evidence to support any type of discrimination against the Slocumbs. (*Id.* ¶ 45; Def.'s Statement of Facts ¶ 49.)

---

4. Defendant contests Plaintiffs' various estimations of time for the events they allege occurred within the Darien Waffle House. (*See* Def.'s Reply in Support of Mot. for Summ. J. at 11.) To contradict Plaintiffs' estimations, Defendant offers speculative calculations based on Plaintiffs' departure time, driving time, and cell phone records, and concludes Mr. Slocumb's total wait inside the restaurant was less than seventeen minutes. (*Id.*) However, all of Defendant's data, with the exception of the time of the phone call, are estimates and are not capable of precise calculation. For the purpose of summary judgment the Court will view the facts in the light most favorable to Plaintiffs.

Waffle House denies the facts alleged by the Plaintiffs.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.*

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." *Graham*, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog*, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co., Ltd. v. Ze-*

*nith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. *Section 1981 Claims*

■ Section 1981 provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) . . . For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) . . . The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. A plaintiff asserting a § 1981 claim ultimately must prove that the defendant failed to perform a contractual obligation as a result of intentional discrimination on the basis of race. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

■ Where a plaintiff does not proffer direct evidence of intentional discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This framework is appropriately applied in public accommodation cases. *See Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir.1991); *Laroche v. Denny's, Inc.*, 62 F.Supp.2d 1375, 1382 (S.D.Fla.

1999). Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination, which permits an inference of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Once plaintiff establishes a *prima facie* case, the burden of production shifts to defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse action. *Id.; Laroche,* 62 F.Supp.2d at 1382. If the defendant meets this burden, then plaintiff must present sufficient evidence to demonstrate that the proffered reason is merely a pretext for discrimination. *See id.*

### 1. Prima Facie Case

██ To establish a *prima facie* case under § 1981, a plaintiff must prove:

(1) that she is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; *i.e.,* the making, performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; and (3) that the defendants treated the plaintiff less favorably with regard to the allegedly discriminatory act than the defendants treated other similarly situated persons who were outside plaintiff's protected class.

*Benton v. Cousins Props., Inc.,* 230 F.Supp.2d 1351, 1370 (N.D.Ga.2002).[5] De-

fendant claims Plaintiff cannot produce sufficient evidence to prove the second and third elements of their *prima facie* case because Plaintiffs cannot show (1) that they attempted to contract for services or were denied the full benefits and enjoyment of a public accommodation, and (2) that any similarly situated non-African-Americans received more favorable treatment than Plaintiffs. (Def.'s Mot. for Summ. J. at 8–9.)

#### a. Second Element of Prima Facie Case

Defendant claims Plaintiffs cannot demonstrate the second element of the *prima facie* case because they cannot show that they attempted to request service at the Darien Waffle House and because they "voluntarily left the restaurant." (Def.'s Mot. for Summ. J. at 11.) Thus, Defendant claims Plaintiffs cannot show their treatment was anything other than poor customer service. (*Id.* at 11–12.)

██ Plaintiffs have presented facts that they waited next to a table for nearly an hour waiting for their table to be cleaned, and that no member of the restaurant staff offered to help them. Plaintiffs' acts could be construed as a request for service at a Waffle House restaurant. Plaintiffs have testified that both Mr. Slocumb and Mrs. Slocumb verbally requested service, and that none of the Darien Waffle House staff acknowledged their requests. Defendant

---

**5.** Plaintiffs argue the Court should adopt the Sixth Circuit's *prima facie* analysis, which permits a plaintiff to satisfy the third prong of the *prima facie* case with evidence that the "plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." (Pls.' Opp. to Def.'s Mot. for Summ. J. at 6) (quoting *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 869 (6th Cir.2001).) This Court has rejected the *Christian* standard in a directly analogous restaurant accommodation context because " '[t]he test requires a finding of the ultimate issue—discrimination—and its

operative phrase, "markedly hostile manner," is so vague as to be unhelpful ....' " *Solomon v. Waffle House, Inc.,* No. 03–cv–2797–ODE, 365 F.Supp.2d 1312, 1325, 2004 WL 3314941 at *12 n. 4 (N.D.Ga. Nov. 4, 2004) (quoting *Benton,* 230 F.Supp.2d at 1378). "[W]ithout guidance from the Eleventh Circuit or the U.S. Supreme Court, this Court declines to expand the traditional prima facie test for racial discrimination." *Id.* The Court notes that Plaintiffs' proposed standard would not change the outcome of the Court's analysis of the third prong of the *prima facie* case. *See* Section II.B.1.b, *infra.*

claims Plaintiffs did not produce evidence that any of the servers heard Plaintiffs' requests or noticed them standing by the table. However, Mr. Slocumb testified a waitress removed a tip from the table at which he was waiting to be seated and the waitress did not acknowledge him or clear the table for his use. Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs, by standing next to a table for nearly an hour and by verbally requesting to be served, adequately requested service for the purpose of establishing the second element of their *prima facie* case.

Defendant also contends that Plaintiffs voluntarily left the restaurant and are therefore foreclosed from establishing their *prima facie* case. The Court finds Plaintiffs' testimony that they waited nearly an hour without receiving service sufficient to support a finding that they did not "voluntarily" terminate any transaction between Plaintiffs and Defendant. *See Lloyd v. Waffle House, Inc.,* 347 F.Supp.2d 249, 254 (W.D.N.C.2004) (rejecting defendant's argument that plaintiffs "voluntarily" left the restaurant and finding failure to serve plaintiff for 45 minutes "well exceeded what an ordinary person would believe to be reasonable"). The Court cannot say, as a matter of law, that Plaintiffs' alleged treatment was simply the result of poor service. Plaintiffs have presented sufficient evidence that Defendant violated Plaintiffs' contractual rights by refusing to sell them food they intended to purchase.

b. *Third Prong of Prima Facie Case*

■ Defendant also claims that Plaintiffs cannot establish the third prong of their *prima facie* case because they were not similarly situated to the patrons to whom they seek to compare themselves.

(Def.'s Mot. for Summ. J. at 13.) While the comparators need not be identical to Plaintiffs to demonstrate Plaintiffs were treated less favorably than those· outside Plaintiffs' protected class, "there should be a reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.,* 270 F.3d 94 (2d Cir.2001) (citation omitted). Defendant claims that the only groups that Plaintiffs contend were afforded preferable service were smaller in size, and thus are not a valid basis for comparison.

Plaintiffs have presented evidence that several groups of white patrons entered the Darien Waffle House while Mr. Slocumb waited by his uncleared table. These patrons' tables were cleared, their orders were taken, and they were served with the food they ordered. While Defendant is correct that none of the white groups was as large as the Slocumbs, this does not affect the validity of the comparison between the groups in this case. The difference in group size between the white patrons and the Slocumbs is not material where the servers who attended to the white patrons could also have attended to the Slocumbs. This is not a situation where the only available seating was for a smaller group.[6] Instead, viewing the evidence in the light most favorable to Plaintiffs, both the Slocumbs and the white groups acted similarly in attempting to be served at the Darien Waffle House. However, only the white groups had their tables cleaned, orders taken, or food served. Plaintiffs have produced sufficient evidence that Defendant treated the Plaintiffs less favorably than the Defendant treated other similarly situated persons who were outside Plaintiffs' protected class.

---

**6.** The non-binding legal authority cited by Defendant is distinguishable on this basis; plaintiffs in *Lizardo* were in a line waiting to be seated and complained that smaller groups were seated more quickly. *See Lizardo,* 270 F.3d at 101. Furthermore, "[w]hether two people are similarly situated is usually a question of fact for the jury." *Id.*

Accordingly, the Court finds that Plaintiffs have established a *prima facie* case of intentional race discrimination.

### 2. Defendant's Legitimate Nondiscriminatory Reason

Once a plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. In this case, Defendant claims Plaintiffs' treatment was the result of poor service because "Plaintiffs entered a crowded, understaffed Waffle House during the peak business rush." (Def.'s Mot. for Summ. J. at 15.) Defendant claims it has satisfied its burden through evidence that Plaintiffs entered the restaurant during the "breakfast rush," only three employees were working while Plaintiffs were waiting for their table, and the restaurant was nearly filled to capacity. (*Id.*)

Defendant's burden to demonstrate a legitimate, nondiscriminatory reason for its actions is "exceedingly light." *See Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994) (citation and quotation omitted). The Defendant's burden is only a burden of production, not proof. *See Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982). Defendant has satisfied its "exceedingly light" burden of producing evidence that Plaintiffs' treatment was the result of being understaffed and busy, which is a legitimate, nondiscriminatory reason for failing to serve the Slocumbs.

### 3. Plaintiffs' Showing of Pretext

To survive summary judgment, Plaintiffs must demonstrate that the Waffle House's legitimate, nondiscriminatory reason was merely a pretext for race discrimination. *See Benton*, 230 F.Supp.2d at 1369. Plaintiffs may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997) (quotation and citation omitted) (emphasis omitted). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. B.P. Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994).

The Court has considered all of the evidence, including the evidence presented by Plaintiffs in establishing their *prima facie* case. Plaintiffs have submitted evidence that they were the only black patrons seeking service and were the only patrons not served during the forty-five to sixty minutes they waited by their table. Other white patrons had their tables cleared, orders taken, and food served during this time period. Plaintiffs have testified that the servers did not respond when Plaintiffs requested service and did not respond when the Slocumbs' child asked if they were being denied service "because we're black." Considering the record as a whole, the Court finds that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact whether Defendant's proffered legitimate, nondiscriminatory reason is credible. Therefore, Plaintiffs have met their burden under the *McDonnell Douglas* framework and have produced sufficient evidence such that based on the record as a whole, a reasonable trier of fact could find intentional discrimination on the basis of race.

### 4. Waffle House's Liability

Defendant argues that it is not liable for its employees' refusal to serve Plaintiffs because the employees acted on their own, and because Plaintiffs did not give management sufficient opportunity to resolve

the problems. (Def.'s Mot. for Summ. J. at 17–20.)

Waffle House's liability for the alleged discriminatory conduct is evaluated under agency law. *See Solomon,* 365 F.Supp.2d at 1329, 2004 WL 3314941 at *16 (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Pursuant to § 219(1) of the Restatement of Agency, an employer is liable for the torts of its employees committed while acting in the scope of their employment. Restatement (Second) of Agency § 219(1) (2004); *see also Arguello v. Conoco,* 207 F.3d 803, 810 (5th Cir.2000) Even if the employees are acting outside the scope of employment, the employer may still be liable for the employees' conduct. *See* § 219(2).

■ Plaintiffs have presented sufficient evidence for a jury to find that the Waffle House employees were acting within the scope of their employment when they refused to serve Plaintiffs. In *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241 (11th Cir.2001), the Court held that a reasonable jury could conclude that a cook was acting within the scope of his employment in part because he was cooking when he used the allegedly offensive language. *See also Arguello,* 207 F.3d at 810–12. Similarly, in this case, the Waffle House employees were working as servers at the time of the incident, the alleged misconduct involved their function as servers, and they were authorized by Waffle House to interact with patrons. Thus, a jury could find that the servers were acting in the scope of their employment when they allegedly discriminated against the Slo-cumbs.

Defendant further claims Waffle House is not liable because the Plaintiffs did not give management a sufficient opportunity to address and resolve their discrimination complaint. Plaintiffs, however, have presented evidence that they immediately complained to Waffle House's corporate office by calling the 1–800 number posted at the restaurant, thus availing themselves to the only opportunity Waffle House offered to receive management's assistance. A jury could find that Waffle House's failure to respond immediately, its ultimate finding that discrimination had not occurred, and its failure to make reasonable attempts to contact Plaintiffs, implicitly condoned the employees' alleged wrongdoing. Based on the record available, the Court denies Defendant's motion for summary judgment on the grounds that a reasonable jury could find Waffle House liable for its employees' actions.

### 5. *Injunctive Relief*

■ Defendant claims Plaintiffs may not seek injunctive relief because they assert they will never dine at another Waffle House again. To obtain injunctive relief, Plaintiffs must show a "real or immediate threat that [they] will be wronged again." *Solomon,* 365 F.Supp.2d at 1331, 2004 WL 3314941 at *19. In this case, Plaintiffs have testified they would return to Waffle House if Waffle House changes its policies and practices to ensure the elimination of discrimination. Accordingly, viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have standing to seek injunctive relief.

### 6. *Punitive Damages*

■ Defendant claims Plaintiffs are not entitled to punitive damages because Plaintiffs have failed to show that the employees' alleged misconduct was the result of Waffle House's reckless disregard of Plaintiffs' federally protected rights. (Def.'s Mot. for Summ. J. at 21.) An employer may not be held liable for punitive damages for a server's misconduct unless a plaintiff produces evidence that management ratified or approved the discriminatory acts. *See Wilkins v. Denam-*

*erica Corp.,* No. 1:99–cv–102, 2001 WL 1019698, at *11 (W.D.N.C. May 5, 2001). Plaintiffs claim they sufficiently alerted management to their problem by calling the corporate office immediately after the incident, and furthermore, that Waffle House ratified the discrimination by failing to properly investigate the alleged discrimination and failing adequately to attempt to contact Plaintiffs regarding their claim of discrimination. Defendant contends these minimal efforts are insufficient to raise a credible issue that Defendant acted with reckless disregard of Plaintiffs' rights. The evidence Plaintiffs allege in support of their punitive damages claims is thin at best, but at this stage is minimally sufficient to avoid summary judgment.

### C. *Section 2000a Claims*

■ Plaintiffs also state a claim for racial discrimination in the denial of a public accommodation in violation of 42 U.S.C. § 2000a. Section 2000a provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of face, color, religion, or national origin.

42 U.S.C. § 2000a. To establish a claim under § 2000a, a plaintiff must demonstrate that the plaintiff (1) is a member of a protected class, (2) attempted to contract for services and afford herself the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside her protected class who received full benefits or were treated better. *Benton,* 230 F.Supp.2d at 1382 (citation omitted). The inquiries for a § 2000a claim and § 1981 claim are substantially similar and the parties have briefed them as such. For the

reasons set forth *supra,* the Court denies Defendant's motion for summary judgment on Plaintiffs' § 2000a claim.

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**. The Consolidated Pre–Trial Order is required to be filed in this case on or before April 15, 2005.